**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-00717-CMA-BNB

BROKERS' CHOICE OF AMERICA, INC., and
TYRONE M. CLARK,

      Plaintiffs,

v.

NBC UNIVERSAL, INC.,
GENERAL ELECTRIC CO.,
CHRIS HANSEN,
STEVEN FOX ECKERT, and
MARIE THERESA AMOREBIETA,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR ATTORNEYS' FEES AND COSTS**

---

This matter is before the Court on Defendants' Motion for Award of Reasonable Attorneys' Fees and Costs (Doc. # 88).  Plaintiffs have raised a number of objections. For the following reasons, the Court grants in part and denies in part Defendants' Motion.

## I. BACKGROUND

The factual and procedural history of this case is more fully set forth in this Court's Order granting Defendant's Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. # 77.)  A brief recap follows.

Plaintiff Brokers' Choice of America, Inc. ("BCA") operates as an Independent Marketing Organization ("IMO") in the insurance industry.  IMOs enter into agreements with insurance companies to market their insurance products.  IMOs then recruit and make these insurance products available to independent licensed insurance agents who, in turn, market these products to consumers.  BCA was founded by Plaintiff Tyrone M. Clark, who was the majority owner of BCA and served as BCA's CEO during the relevant period.

Defendant NBC Universal ("NBCU") produced a television report ("Report") focusing on the predatory sales tactics used in the sale of equity-indexed annuities to senior citizens.  The Report, which aired on *Dateline NBC* on April 13, 2008, included a segment about training sessions for insurance agents marketed by BCA under the name Annuity University ("AU").  *Dateline* producers attended a two-day training session at AU after the Alabama Department of Insurance ("ALDOI") had issued Alabama insurance producer licenses to the *Dateline* producers.  The producers would not have been able to register for the session without these licenses.  At the session, the Dateline producers recorded the classes and some of the recorded footage was included within the Report.

Plaintiffs initiated this action on March 31, 2009.  In the original Complaint, Plaintiffs asserted state tort law claims for defamation, trespass, fraud, and intrusion, and a violation of their civil rights under 42 U.S.C. § 1983.  On October 22, 2009, the Court granted Defendants' Motion to Dismiss without prejudice in an oral ruling.

2

Plaintiffs then filed an Amended Complaint that alleged only two claims for relief – the state tort claim for defamation and the civil rights claim under § 1983.  Defendants filed a Motion to Dismiss the Amended Complaint.  (Doc. # 49.)  The Court granted the Motion on January 1, 2011, and dismissed the case with prejudice.  (Doc. # 77.) Plaintiffs filed a Notice of Appeal on January 27, 2011. (Doc. # 82.)  The appeal is currently pending before the Tenth Circuit.

On February 7, 2011, Defendants filed the instant motion, requesting attorneys' fees and costs for work expended in defense of the civil rights claim under 42 U.S.C. § 1988, and attorneys' fees for work expended in defense of the state tort law claims under Colo. Rev. Stat. § 13-17-201.  (Doc. # 88.)  Three of Defendants'  attorneys, Mr. Thomas B. Kelley (Doc. # 88-2), Ms. Gayle C. Sproul (Doc. # 88-3), and Ms. Hilary Lane (Doc. # 88-4), submitted affidavits concerning the reasonableness of their requested fees.  However, Defendants' attorneys did not submit their actual billing statements.  Plaintiffs responded on March 3, 2011.  In their Response, Plaintiffs argued that Defendants' fee application was deficient because it failed to include "meticulous, contemporaneous time records" that revealed how hours were allotted to specific tasks, and thus Defendants had failed to prove the reasonableness of their claimed fees.[1] (Doc. # 91.)  Plaintiffs contended that the Court should reject the fee application in its

---

[1]  Without citation to any legal authority, Plaintiffs also requested that any award of attorneys' fees should be stayed until the appeals process has concluded in the interests of judicial efficiency.  However, a party is entitled to an award of attorneys' fees notwithstanding the pendency of an appeal. Fed. R. Civ. P. 62(d).  A stay is only available when the appellant has posted a *supersedeas* bond.  *Id.*  Plaintiffs have not posted a *supersedeas* bond and, thus, the Court will not stay an award of attorneys' fees.

entirety or substantially reduce the fees.  In their Reply, filed on March 24, 2011,

Defendants attached actual billing statements.  (Doc. # 95-3.)  The Court allowed

Plaintiffs to file a surreply in order to give them the opportunity to assess the

reasonableness of Defendants' claimed fees based on these billing statements.  (Doc. #

96.)  Plaintiffs filed their Surreply on May 11, 2011.  (Doc. # 97.)

## II.  <u>LEGAL STANDARD</u>

When evaluating a motion for attorneys' fees, the Court must follow the

three-step process set forth in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983),

*overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean*

*Air*, 483 U.S. 711, 725 (1987).

The first step in determining a fee award is to determine the number of hours

reasonably spent by counsel for the prevailing party.  *Malloy v. Monahan*, 73 F.3d 1012,

1017 (10th Cir. 1996); *Ramos*, 713 F.2d at 553.  Factors considered in a reasonable-

ness determination include: (1) whether the amount of time spent on a particular task

appears reasonable in light of the complexity of the case, the strategies pursued, and

the responses necessitated by an opponent's maneuvering; (2) whether the amount of

time spent is reasonable in relation to counsel's experience; and (3) whether the billing

entries are sufficiently detailed, showing how much time was allotted to a specific task.

*Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs of Boulder Cnty.*, No. 06-cv-

00554, 2010 WL 3703224, at *2-3 (D. Colo. Sept. 13, 2010).  "Counsel for the prevailing

party should make a good faith effort to exclude from a fee request hours that are

4

excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424,

434 (1983).  Although courts are obligated to exclude hours not reasonably expended

from the fee award, courts need not "identify and justify every hour allowed

or disallowed, as doing so would run counter to the Supreme Court's warning that a

'request for attorney's fees should not result in a second major litigation.'" *Malloy*, 73

F.3d at 1018 (quoting *Hensley*, 461 U.S. at 437); *Fox v. Vice*, 131 S. Ct. 2205, 2216

(2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve

auditing perfection.").

Once the Court has determined the number of hours reasonably spent, it must

then determine a reasonable hourly rate of compensation.  *Ramos*, 713 F.2d at 555.

"A reasonable rate is the prevailing market rate in the relevant community."  *Malloy*, 73

F.3d at 1018 (citing *Blum v. Stenson*, 465 U.S. 885, 897 (1984)).  The party seeking the

award has the burden of persuading the court that the hours expended and the hourly

rate are both reasonable.  *Id.*

The third step consists of multiplying the reasonable hourly rate by the number

of hours reasonably expended to determine the "lodestar" amount.  *Hensley*, 461 U.S.

at 433.

## III. ANALYSIS

## A.   WHETHER DEFENDANTS MAY RECOVER ATTORNEY FEES

Before turning to the reasonableness of the requested fees, the Court must first

determine whether fees should be awarded.  In their motion, Defendants seek

$303,135.50 in attorneys' fees for work expended in defense of Plaintiffs' state tort

claims and general litigation tasks, and $118,602.00 in attorneys' fees and costs for

work expended in defense of Plaintiffs' civil rights claim.  The following chart is taken

from Defendants' motion and summarizes the fee request:

| Timekeeper | Total Hours Expended | Hourly Rate | Value of Total Hours Expended | Value of Hours Expended on State Tort Law and General Tasks | Value of Hours Expended on Civil-Rights Dedicated Tasks |
|---|---|---|---|---|---|
| Thomas B. Kelley | 264.3 | $425 | $112,327.50 | $88,680.50 (208.66 hours) | $23,647.00 (55.64 hours) |
| Gayle C. Sprout | 294.5 | $425 | $125,162.50 | $87,613.75 (206.15 hours) | $37,548.75 (88.35 hours) |
| Hilary Lane | 294.5 | $425 | $125,162.50 | $87,613.75 (206.15 hours) | $37,548.75 (88.35 hours) |
| Amanda M. Leith | 28.1 | $320 | $8,992.00 | $2,304.00 (7.2 hours) | $6,688.00 (20.9 hours) |
| Adam M. Platt | 159.8 | $285 | $45,543.00 | $33,088.50 (116.1 hours) | $12,454.50 (43.7 hours) |
| Legal Assistants | 91.0 | $50 | $4,550.00 | $3,835.00 (76.7 hours) | $715.00 (14.3 hours) |
| **TOTALS** | **1,132.2** | | **$421,737.50** | **$303,135.50 (820.96 hours)** | **$118,602.00 (311.24 hours)** |

(Doc. # 88 at 10.)

1.      Fees for Work Related to State Tort Claims and General Litigation Tasks

Plaintiffs do not appear to dispute that Defendants are entitled to reasonable

attorney fees for work dedicated to the defense of state tort claims.  Indeed, such an

award is mandatory as Colorado statute provides:

> In all actions brought as a result of . . . an injury to person or property
> occasioned by the tort of any other person, where any such action is
> dismissed on motion of the defendant prior to trial under rule 12(b) of the
> Colorado rules of civil procedure, such defendant shall have judgment for
> his reasonable attorney fees in defending the action.

Colo. Rev. Stat. § 13-17-201; s*ee also Crandall v. City of Denver*, 238 P.3d 659, 662

(Colo. 2010) (fee award is mandatory upon dismissal of tort action pursuant to C.R.C.P.

12(b)).  The statute applies with equal force when, as in this case, a federal court

dismisses a pendent state tort pursuant to Fed. R. Civ. P. 12(b)(6).  *Jones v. Denver

Post Corp.*, 203 F.3d 748, 757 n.6 (10th Cir. 2000).  Although § 13-17-201 does not

provide for fee awards for dismissals of § 1983 claims, *see State v. Golden's Concrete

Co.*, 962 P.2d 919, 926 (Colo. 1998) (en banc), Defendants are entitled to recover all

reasonable fees not specifically dedicated to the civil rights claim that were necessarily

incurred in defending the action.  *See Dubray v. Intertribal Bison Co-op.*, 192 P.3d 604,

607 (Colo. App. 2008).

2.      Fees for Work Related to Defense of Civil Rights Claim

Whether Defendants may recover their attorneys' fees for work expended in

defense of the civil rights claim is vigorously contested.  Under 42 U.S.C. § 1988(b), a

"prevailing party" in a civil rights suit may recover reasonable attorneys' fees.  Although

7

a prevailing plaintiff is ordinarily entitled to attorney fees, *see Mitchell v. City of Moore*,

*Okla.*, 218 F.3d 1190, 1203 (10th Cir. 2000), a prevailing defendant may recover such

fees only where the lawsuit was "vexatious, frivolous, or brought to harass or embarrass

the defendant." *Hensley*, 461 U.S. at 429 n.2. The Supreme Court has cautioned that

courts must avoid

> the understandable temptation to engage in *post hoc* reasoning by
> concluding that, because a plaintiff did not ultimately prevail, his action
> must have been unreasonable or without foundation. This kind of hindsight
> logic could discourage all but the most airtight claims, for seldom can a
> prospective plaintiff be sure of ultimate success.

*Christiansburg Garment Co., v. E.E.O.C.*, 434 U.S. 412, 421-22 (1978). Thus,

Defendants are presented with a "difficult standard to meet, to the point that rarely will a

case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell*,

218 F.3d at 1203 (10th Cir. 2000); *see also Clajon Prod. Corp. v. Petera*, 70 F.3d 1566,

1581 (10th Cir. 1995) (stating that attorneys' fees are awarded to defendants under

§ 1988 only in "rare circumstances"). Claims that are dismissed for failure to state a

claim "do not automatically meet the standard . . . for an award of fees to the

defendant." *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995).

In this case, the Court dismissed Plaintiffs' § 1983 claim for failure to allege

sufficient facts to demonstrate state action on the part of private party Defendants. The

basis for the alleged state action was the ALDOI's issuance of insurance licenses to

Defendants for the sole purpose of allowing Defendants to access BCA's training

sessions. In their motion for attorneys' fees, Defendants argue that "[P]laintiffs' theory

of state action was one that had been rejected under clearly established precedent"

and that Plaintiffs' claims were "frivolous, unreasonable, and without foundation."  (Doc.

# 88 at 11, 13.)

In *Anderson v. Suiters*, 499 F.3d 1228 (10th Cir. 2007), a case cited extensively

by this Court in its order dismissing this case, the plaintiff had filed a § 1983 action

against a television reporter and a company owned television station (the "media

defendants") for violation of her constitutional right to privacy.  The plaintiff alleged that

her estranged husband had raped and videotaped her while she was unconscious.  *Id.*

at 1231.  The alleged basis for state action in *Anderson* was that a police officer, who

had received the videotape with the understanding that it was to be used for law

enforcement purposes only, instead gave an interview to the media defendants,

provided them with the videotape, and arranged for them to contact the plaintiff.  *Id.*  In

rejecting the plaintiff's arguments that the media defendants were acting jointly with the

police officer, *Anderson* noted that there was no evidence that the media defendants

knew about the confidentiality agreement between the plaintiff and the police officer,

and that the complaint failed to allege facts "demonstrating a shared purpose" by the

officer and the media defendants "to violate [the plaintiff's] constitutional rights."  *Id.* at

1233.

In dismissing the § 1983 claim, this Court found *Anderson* instructive, noting that

Defendants and ALDOI had "their own separate goals," as did the defendants in

*Anderson.*  (Doc. # 77 at 22.)  However, the facts in *Anderson* were not so identical to

the facts of this case that Plaintiff's theory was clearly proscribed by binding precedent. This case did not involve the turnover of information; rather, the state facilitated the Defendants' investigation by granting licenses for the express and limited purpose of investigating Plaintiffs' operation.  Thus, although the Court ultimately dismissed Plaintiffs' § 1983 claim for failure to allege facts sufficient to sustain a claim of state action against the private party Defendants, the Court finds that this claim was not so frivolous as to warrant attorneys' fees under § 1988.  Therefore, Defendants may not recover the $118,602 in claimed attorneys' fees and costs for work expended in defense of Plaintiffs' civil rights claim.

**B.    REASONABLENESS OF HOURS**

Plaintiffs raise numerous challenges to the reasonableness of Defendants' requested fees.  Specifically, Plaintiffs assert that (1) Defendants' allocation of the hours between work spent on the defense state law tort claims and the civil rights claim is unacceptable; (2) the fee request for work performed by in-house counsel Ms. Hilary Lane lacks sufficient documentation and must be rejected; (3) and that fees associated with Defendants' instant motion, fees that were written off by Defendants' counsel, fees associated with redacted time entries, and fees for work performed by paralegals should all be rejected.[2]  The Court will address these challenges in turn.

---

[2]  Plaintiffs also argue that the fees should be reduced because of block-billing, duplication of work, and top-heavy billing.  The Court has considered these objections but finds that its reduction of fees, as set forth herein, obviates the need for further reductions.

1.    <u>Allocation of Hours</u>

Given the Court's determination that Defendants should be awarded attorneys' fees only for work related to the state tort claims and general litigation tasks, it is necessary to allocate between the hours spent on the defense of the state law tort claims and defense of the civil rights claim.  Unfortunately, Defendants' method of allocation is not a model of clarity.

By affidavit, Mr. Kelley explains how he allocated the hours.  On behalf of himself, associate attorneys Ms. Amanda Leith and Mr. Adam Platt, and the legal assistants, Mr. Kelley first separated hours between two categories: (1) tasks dedicated to defense of the state tort law claims and general litigation tasks, and (2) tasks dedicated to defense of the civil rights claims.  (Doc. # 88-2 at 6.)  In a supplemental affidavit attached to the Reply, Mr. Kelley reveals, for the first time, that all but 137.5 hours were categorized in this manner.  (Doc. # 95-2 at 3.)   However, Mr. Kelley does not disclose what he relied on in determining which hours should be placed into which category and the Court, after scrutinizing the billing records, is unable to discern how Mr. Kelley was able to so categorize the hours.

The confusion is magnified by the fact that Mr. Kelley was unable to separate 137.5 hours into these two distinct categories.  For these entries, Mr. Kelley allocated 80% of the hours into the state tort law and general tasks category for work related to Defendants' first motion to dismiss, and 70% of the hours into the state tort law and general tasks category for work related to the second motion to dismiss.  (Doc. # 88-2,

11

¶ 12.)  The 80% estimate for work related to the first motion to dismiss is based on the fact that four of the five claims pled against them were state tort claims.  The 70% estimate for work related to the second motion to dismiss is based on the fact that, although Plaintiffs dropped three state tort claims in their Amended Complaint, the vast majority of the work was addressed to the remaining state law defamation claim because defending against the civil rights claim demanded "relatively little new work." (Doc. # 7, ¶ 12.)

Mr. Kelley's allocation method purports to apply only to the time entries of Mr. Kelley, Ms. Leith, Mr. Platt, and the legal assistants.  However, without attempting to precisely allocate her own hours, Ms. Sproul declared that she allocated her time as described by Mr. Kelley, who had expressly stated that his allocation method did not pertain to Ms. Sproul's hours.  (Doc. # 88-3, ¶ 6.)  In turn, Ms. Lane declared that Ms. Sproul's allocation of hours accurately reflected the time she spent on the various claims as well.  (Doc. # 88-4, ¶ 5.)  However, neither Ms. Sproul or Ms. Lane actually allocated their time as described by Mr. Kelley as neither differentiated between time spent on the first and second motions to dismiss; rather, they applied the 70% figure to all of their claimed hours.  Moreover, Mr. Kelley attested that he used the percentage estimates for only for the hours that he was unable to categorize, whereas Ms. Sproul and Ms. Lane used a flat percentage for all of their hours.

These flaws in the allocation method notwithstanding, the Court finds it practicable to assess the reasonableness of the fee allocation as a whole in light of

the Supreme Court's recent instruction that trial courts ought to strive for "rough justice" rather than "achieve auditing perfection." *Fox*, 131 S.Ct. at 2216 (stating that trial courts should not "become green-eyeshade accountants."). In total, Defendants claim that their attorneys expended a combined 820.96 out of the 1,132.20 total hours of work (72.5%) defending against the state tort claims and for general litigation tasks

The Court finds that expending 72.5% of the hours in defending against the state tort claims and for general litigation tasks was reasonable. With regard to the first motion to dismiss, Defendants devoted twenty-five of their thirty-four (73.5%) pages of argument in its motion and eighteen of their twenty-five (72%) pages of argument in its reply to addressing the state tort claims. (Doc. ## 10, 29.) With regard to the second motion to dismiss, Defendants devoted twenty of their thirty-one (64.5%) pages of argument in its motion and eleven of its nineteen (58%) pages of argument in their reply to addressing the defamation claim. Although the percentages for the second motion to dismiss are below the 72.5% figure, many of the arguments concerning the § 1983 claim had been raised by Defendants in their first motion to dismiss. In addition, only five pages of this Court's 25-page Order granting the second motion to dismiss addressed the § 1983 claim. (Doc. # 77.) That Defendants spent the majority of their time defending against the state tort claims is reasonable.

Although Defendants' byzantine method of allocation leaves much to be desired, the Court finds that Defendants' total estimate is reasonable considering that the state tort claims dominated this action, as evidenced by the briefing, motion hearings, and the

Court's orders.  *See Fox*, 131 S.Ct. at 2216 (stating that "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.").

      2.   <u>Ms. Lane's Requested Fees</u>

Defendants request fees for work performed by Ms. Lane pertaining to the state tort law claims in the amount of $87,613.75 for 206.15 hours of work.  However, Ms. Lane failed to maintain any time records.  It is the burden of the party claiming fees to prove the hours to the district court.  *See Case v. Unified Sch. Dist., No. 233, Johnson Ctny, Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1988).  In *Ramos*, the Tenth Circuit stated that:

> [I]f [prevailing parties] intend to seek attorney's fees . . . [their attorneys] must keep meticulous, contemporaneous time records to present to the court upon request.  These records must reveal for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks . . ..

713 F.2d at 554.  This requirement exists so that trial courts may have some basis upon which to assess the reasonableness of requested fees.  In the absence of billing records, the Court simply has no basis for determining how much time was reasonably spent by Ms. Lane.  Furthermore, any attempt to merely reduce Ms. Lane's hours, rather than reject the claimed fees in its entirety, would be an exercise in the arbitrary.

Defendants attempt to circumvent the requirement that attorneys must submit billing statements through Ms. Lane's declaration that she spent at least as many hours working on the case as Ms. Sproul, and therefore, Ms. Sproul's time records are an

accurate and reliable measure of Ms. Lane's time.  (Doc. # 95-1 at 3.)  Even if the Court

were to accept Ms. Lane's declaration that she spent 294.5 hours on this case, the

Court cannot determine whether these hours were reasonably expended.  To recover

attorneys' fees, a party must "prove and establish the reasonableness of each dollar,

each hour, above zero."  *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir.

2000).  Accepting Ms. Lane's self-serving assertions in lieu of documentary proof would

set dangerous precedent as it would essentially eradicate the requirement that

attorneys keep track of their time.  Although Ms. Lane may have spent significant time

working on this case, she should have kept formal records of her time if she intended

to seek compensation for her work.  Thus, the Court rejects Defendants' request for

**$87,613.75** in fees for work performed by Ms. Lane in defense of Plaintiffs' state tort

claims.

This modified chart reflects the Court's analysis up to this point:

| Timekeeper | ~~Total Hours Expended on Civil Rights Dedicated Tasks~~ | Total Hours Expended on State Tort Law and General Tasks | Hourly Rate | Value of Hours |
|---|---|---|---|---|
| Thomas B. Kelley | ~~55.64~~ | 208.66 | $425 | $88,680.50 |
| Gayle C. Sproul | ~~88.35~~ | 206.15 | $425 | $87,613.75 |
| ~~Hilary Lane~~ | ~~88.35~~ | ~~206.15~~ | ~~$425~~ | ~~$87,613.75~~ |

| Timekeeper | ~~Total Hours Expended on Civil Rights Dedicated Tasks~~ | Total Hours Expended on State Tort Law and General Tasks | Hourly Rate | Value of Hours |
|---|---|---|---|---|
| Amanda M. Leith | ~~20.9~~ | 7.2 | $320 | $2,304.00 |
| Adam M. Platt | ~~43.7~~ | 116.1 | $285 | $33,088.50 |
| Legal Assistants | ~~14.3~~ | 76.7 | $50 | $3,835.00 |
| **TOTALS** | | **614.81** | | **$215,521.75** |

3. <u>Fees Dedicated to Recovery of Attorney Fees</u>

Defendants request $13,005 in fees associated with recovering attorneys fees.[3]

Under Colo. Rev. Stat. § 13-17-102, attorneys' fees are recoverable only for work

associated with a motion for attorneys' fees where the trial court finds that the

opposition to the motion lacks substantial justification. *See Anderson v. Pursell*, 244

P.3d 1188, 1198 (Colo. 2010) (en banc). This "substantial justification" test applies to

fees requested under § 13-17-201. *Foxley v. Foxley*, 939 P.2d 455, 460 (Colo. App.

1996) (stating that the "substantial justification" analysis is "necessarily applicable to

---

[3] In their Surreply, Plaintiffs claim that Defendants revealed in their Reply that they sought $14,695 in fees for work dedicated to recovery of attorneys' fees. (Doc. # 97 at 5.) The Court cannot find this precise amount anywhere in the Reply. However, it appears to be roughly the difference between the total amount of fees in the billing records (Doc. # 95-3 at 85) and the so-called "grand total," which did not include fees for work after the Court dismissed the case with prejudice. (Doc. # 95-3 at 3-4.) According to the billing records (and not what Defendants actually claimed), Defendants expended $15,006.5 on work related to the instant motion ($299,929 - $284,922.50). However, Defendants appear to actually claim only $13,005 in fees related to the motion to recover fees (8.8 hours of Ms. Sproul's time x $425.00 hourly rate + 21.8 hours of Mr. Kelley's time x $425.00 hourly rate).

fees requested under § 13-17-201").  The Court finds that Plaintiffs' opposition to the motion for fees was substantially justified and, thus, fees should not be awarded for work dedicated to the motion for attorneys' fees.  Thus, the Court will reduce the fee award by **$13,005**.

4.     <u>Fees Associated with Redacted Time Entries</u>

Defendants' billing statements contain several redacted time entries totaling $4,128.50 in fees.  Plaintiffs contend that these redacted entries should be rejected because they do not provide sufficient information for the Court to assess the reasonableness of these fees.  The Court agrees.  These redacted entries deprive both the Court and Plaintiffs of the ability to determine that these redacted fees were reasonably incurred.  Thus, the Court will deduct **$4,128.50** in fees for these redacted entries.

5.     <u>Written-Off Fees</u>

Defendants' attorneys wrote-off $3,993.01 in fees for early payment and other discounts.[4]  These written-off fees essentially decreased the attorneys' rate and should not be charged to Plaintiffs.  Attorneys should not bill fees to opposing counsel those fees that it would not bill to its clients.  *See Kan. Penn Gaming, LLC v. HV Properties of Kan., LLC*, --- F. Supp. 2d ---, 2011 WL 1885853, at *7 (D. Kan. May 18, 2011).  Thus, the Court will further deduct **$3,993.01** in fees as Defendants did not charge them to the

---

[4]  Plaintiffs claim that Defendants' attorneys' wrote off $4,359.08 in fees.  (Doc. # 97 at 6.)  However, three of the write-offs were duplicative entries and this appears to account for the difference between the Court's total and Plaintiffs' total.

client.  The Court will deduct an additional **$127.50** in fees for the October 27, 2009 entry, which is described as an "E-mail exchange with client regarding seeking publication of motions ruling."  Seeking publication of a bench ruling is not a necessary element of a defense.

      6.    <u>Paralegal Fees</u>

Plaintiffs also claim that Defendants should not be able to recover fees for work performed by their attorneys' legal assistants.  Such fees are recoverable only to the extent the legal assistant performs work traditionally done by an attorney.  *Silver v. Primero Reorganized Sch. Dist. No. 2*, No. 06-cv-02088, 2008 WL 280847, at *3 (D. Colo. Jan. 30, 2008) (citing *Alter Fin. Corp. v. Citizens & S. Int'l Bank of New Orleans*, 817 F.2d 349, 360 (5th Cir. 1987)).  Plaintiffs contend that Defendants have failed to establish that the work performed by their legal assistants was legal work. The Court has reviewed the billing statements and finds that the time entries billed by the legal assistants constitute time entries that would typically be billed to clients, and were, in fact, billed to Defendants.  Thus, the Court finds that Defendants are entitled to recover fees for work performed by their legal assistants.

## C.     REASONABLENESS OF HOURLY RATE

Plaintiffs assert that Defendants' hourly rates are unreasonable.[5]  A reasonable

hourly rate is based on the "prevailing market rates in the relevant community."  *Malloy*,

73 F.3d at 1018.  By affidavit, Mr. Kelley declares that he has practiced law in Colorado

since September of 1972, has been listed in the publication *Best Lawyers in America* for

more than twenty years, and has defended media organizations in state and federal

courts throughout the United States.  (Doc. # 88-2.)  Mr. Kelley also attested that, as of

April 2009, when work on this case began, Ms. Leith was an associate attorney with six

years of experience and Mr. Platt was an associate attorney with two and one-half years

of experience.  Ms. Sproul attested that she has practiced law since September of 1985,

and that her practice has been primarily dedicated to representing members of the news

media with respect to legal issues arising from the content of their publications.  (Doc. #

88-3.)

In support of the reasonableness of their hourly rates, Mr. Kelley declared that he

has served as an expert witness concerning reasonable hourly rates charged by law

firms in Colorado.  He also attests that he is generally familiar with the hourly rates

customarily charged by law firms in the Denver metropolitan area for the kind of work

that was performed in the defense of this action.

---

[5]  Mr. Kelley and Ms. Sproul were billed at $425/hr, Ms. Leith was billed at $320/hr, and Mr. Platt was billed at $285/hr for their time spent working on this case.  The legal assistants were each billed at $50/hr.  Plaintiffs do not suggest what rates would have been more reasonable.

Defendants have supplied no evidence beyond these affidavits in support of the reasonableness of their hourly rates.  The Supreme Court has stated that the party seeking attorneys' fees bears the burden of producing "satisfactory evidence – **in addition to the attorney's own affidavits** – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum*, 465 U.S. at 896 n.11 (emphasis added).   Where, as here, "a district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate."  *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1079 (10th Cir. 2002).  Although the affidavits of Defendants' attorneys alone are insufficient evidence to prove the reasonableness of their rates, the Court is familiar with the rates charged by lawyers in the Denver metropolitan area, and concludes that the rates charged by Defendants' attorneys, given their experience, skill, and specialization, were reasonable.

## IV.  CONCLUSION

Based on the foregoing, the Court calculates Defendants' fee award as follows: After removing the fees for work dedicated to the defense of the civil rights claim and for work performed by Ms. Lane, there remains $215,521.75 in claimed fees.  The Court will then deduct fees associated with the instant motion ($13,005.00), fees associated with redacted time entries ($4,128.50), fees that were written-off by Defendants'

attorneys ($3,993.01), and fees associated with the October 27, 2009 time entry
($127.50).

| | |
|---|---|
| **Total fee award:** | $215,521.75 - $13,005.00 - $4,128.50 - $3,993.01 - $127.50 = **$194,267.74**. |

Accordingly, IT IS ORDERED that Defendants' Motion for Attorneys' Fees
(Doc. # 88) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendants shall be awarded fees in the
amount of **$194,267.74**.

DATED:  August   15  , 2011

BY THE COURT:

s/Christine M. Arguello
CHRISTINE M. ARGUELLO
United States District Judge